**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

BILLIE SELLMAN, as Personal Representative )
of the Estate of Betty L. Sisco, )
                                      )
                   Plaintiff, )
                                      )
vs.                                    )      Case No. 05-CV-545-GKF-PJC
                                      )
AMEX ASSURANCE COMPANY a/k/a IDS )
PROPERTY CASUALTY INSURANCE )
COMPANY, an Insurance Company licenced in )
Illinois, doing business in the State of Oklahoma, )
                                      )
                   Defendant. )

## OPINION AND ORDER

Before the court is the Motion for Partial Summary Judgment filed by defendant AMEX

Assurance Company ("AMEX").  [Docket No. 87].   AMEX moves for partial summary judgment

on plaintiff's bad faith and punitive damages claims.

The Oklahoma Supreme Court first recognized the tort of bad faith by an insurer in the case

of *Christian v. American Home Assurance Company*, 1977 OK 141, 577 P.2d 899, 904.   The

*Christian* court emphasized that not every insurer who resists a claim does so at its peril that it will

be held to have breached its duty to act in good faith.  The court noted:

> We recognize that there can be disagreements between insurer and
> insured on a variety of matters such as insurable interest, extent of
> coverage, cause of loss, amount of loss, or breach of policy
> conditions.  Resort to a judicial forum is not per se bad faith or unfair
> dealing on the part of the insurer regardless of the outcome of the
> suit.  Rather, tort liability may be imposed *only where there is a clear
> showing that the insurer unreasonably, and in bad faith, withholds
> payment of the claim of its insured.*

*Christian*, 1977 OK 141 at ¶ 26, 577 P.2d at 905 (*emphasis added*).

In *Oulds v. Principal Mutual Life Ins. Co.*, 6 F.3d 1431 (10th Cir. 1993), the Tenth Circuit Court of Appeals recognized that a *Christian* cause of action will not lie where there is a legitimate dispute:

> Numerous Oklahoma cases have ruled as a matter of law that no reasonable inference of bad faith arises when an insurer denies a claim solely because of the existence of a legitimate dispute.  As these cases indicate, the fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is "legitimate."  *See Manis*, 681 P.2d at 762 ("Defendant's evidence, if believed by the jury, could have supported an arson defense.")  In *McCoy* and *Capstick*, cases in which the question of bad faith was required to be submitted to the jury, the evidence of the insurer's defense to the underlying claim was so weak that a reasonable inference could be drawn that the insurer denied the claim in bad faith.  Also, as *McCoy* and *Capstick* illustrate, other circumstances indicating bad faith may come into play.  The investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith.  This is particularly true if the manner of investigation suggests that the insurer has constructed a sham defense to the claim or has intentionally disregarded undisputed facts supporting the insured's claim.

*Oulds*, 6 F.3d at 1442.  The Tenth Circuit stated the issue presented to a trial court on a motion for summary judgment filed by an insurer in a bad faith lawsuit:

> A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct.  On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious.  Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Oulds*, 6 F.3d at 1436-37.

2

On June 25, 2002, the original plaintiff in this action, Betty Lucille Gibbs-Sisco ("Sisco"),[1] was involved in a motor vehicle accident with a woman named Ada Green.  Ms. Green was insured by Equity Insurance Company with a $10,000.00 liability limit.  At the time of the accident, Sisco was insured by AMEX for $100,000.00 in UM/UIM coverage.  Sisco received $10,000 from Equity Insurance Company on behalf of Ms. Green.  AMEX waived subrogation and paid Sisco $5,000 in February 2003 on her underinsured motorist claim.  AMEX paid Sisco an additional $2,000 on July 15, 2003.  [Docket No. 96-2 at 30].   AMEX evaluated Sisco's claim at $17,000, and paid a total of $7,000 in underinsured motorist benefits.  [Docket No. 96-3 at 2].

Upon review of the facts of this case in the light most favorable to the plaintiff, this court concludes as a matter of law that the insurer's conduct may not reasonably be perceived as tortious. The facts presented to the court reveal that a legitimate dispute exists about the nature and extent of bodily injury caused by the accident.  A legitimate dispute exists, therefore, as to the value of plaintiff's claim.

In reaching this decision, the court would note that the record evidences conflicting medical opinions by doctors who saw Betty Sisco.  The conflicting opinions relate to whether the pain in Sisco's left shoulder was caused by the motor vehicle accident of June 2002, and whether a bulging of her disc at the C5 level was caused by the motor vehicle accident.

---

[1]
Sisco originally filed her claims against AMEX in state district court on June 3, 2004.  She dismissed her claims on May 12, 2005, and re-filed them in state court on August 5, 2005.  AMEX removed the case to federal court on September 16, 2005.  Sisco died on November 25, 2005, due to causes unrelated to the motor vehicle accident.  On December 22, 2005, the Personal Representative ("PR") of Sisco's Estate filed a Suggestion of Death.  On February 11, 2006, the PR filed a "Motion to Substitute Personal Representative for Deceased Party."  By Order of February 16, 2006, this court substituted the PR as party plaintiff for the decedent.   The term "Sisco" is used interchangeably herein to refer to both the original party plaintiff, Ms. Sisco, and/or the substituted party plaintiff, the PR of Sisco's Estate.

Sisco raises three numbered propositions in her response brief.  First, Sisco contends that AMEX failed to perform an adequate and timely investigation insofar as it improperly relied upon Sisco's attorney to provide information.  Sisco contends that AMEX should have sent Sisco for an independent medical examination and that AMEX should have independently obtained medical documents.

"[W]hen a bad faith claim is premised on inadequate investigation, the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." *Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.*, 71 F.3d 335, 345.  *See also Oulds*, 6 F.3d at 1442 ("[n]o showing was made in this case that [the insurer] overlooked material facts due to an inadequate investigation or that a more thorough investigation would have resolved the discrepancy in statements . . . .")  Similarly, in this case Sisco has made no showing that AMEX overlooked material facts due to an inadequate investigation or that an IME, independently obtained medical documents, or other investigative techniques would have resolved the dispute relative to the nature and extent of the bodily injury caused by the accident.

Second, Sisco argues that AMEX improperly delegated its duty to investigate to Sisco's attorney.  The argument, contained as a sub-argument in connection with the first numbered proposition, fails for the same reasons.  The case cited by plaintiff in support – *Wathor v. Mutual Assurance Administrators, Inc.*, 2004 OK 2, 87 P.3d 559 – is inapplicable here, as it stands for the proposition that the duty of good faith and fair dealing is not normally imposed upon third party administrators of health insurance plans unless the plan administrator acts sufficiently like an insurer.

4

Third, Sisco contends that AMEX did not timely or fairly evaluate Sisco's claim. Sisco argues that AMEX evaluated the claim at $17,000.00 in July of 2003, and has not increased the valuation since that time, but suggested alternative dispute resolution to resolve the claim. AMEX responds that virtually all of Sisco's medical treatments after August of 2003 were either related to her shoulder injury or her cancer, and that it had a legitimate dispute as to causation of the shoulder problem. Dr. Cavanaugh's medical opinion submitted to AMEX by Sisco's attorney provided a reasonable basis for AMEX to determine that the automobile accident caused, at most, an aggravation of a pre-existing shoulder condition. As stated above, the facts here reveal a legitimate dispute exists about the nature and extent of bodily injury caused by the accident.

WHEREFORE, defendant's Motion for Partial Summary Judgment [Docket No. 87] is granted.

IT IS SO ORDERED this 4th day of April 2007.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma